machinery. *Lincoln Chemical Co.* v. *Edwards*, 272 Fed. 142; 289 Fed. 458.

That the section is difficult to construe and apply can not be doubted. Clearly, since the qualifications are in the disjunctive, the taxpayer must prove either that he has no invested capital in the statutory sense or that he has only a nominal capital in the non-statutory sense. We think this taxpayer has no invested capital within the intendment of the statute. The cash he had was almost all advances from his patrons, held by him, as he said, "in trust" till the completion of their contracts. He used neither capital nor credit, but paid his obligations out of and after his receipts. His samples were loaned to him without security. His only permanent asset was his library, and this we can not regard as capital. The amount of his gross income including, as it apparently does, amounts advanced by patrons, is not significant.

Section 209 should be applied.

---

**Appeal of RELIANT LEASING COMPANY.**                    **Docket No. 256.**

On the facts presented, *held,* that the amount paid to the wife of the president of the corporation who owned the same percentage of stock as he did was a distribution of the profits of the corporation.

Submitted January 22, 1925; decided March 9, 1925.

*Emanuel Hertz* and *Louis B. Montford, Esqs.*, for the taxpayer.

*Arthur H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal is from a deficiency letter of the Commissioner dated August 2, 1924, asserting a deficiency of $1,120.51 for the year 1920. Hearing was had on the merits and from the evidence submitted the board makes the following

FINDINGS OF FACT.

1. The taxpayer was a New York corporation with its principal place of business in New York City. It had a capital stock of $5,000, divided into five shares of the par value of $1,000 each, owned during the year in question, as follows: Michael Retzker, one (1) share; Dora Retzker, his wife, one (1) share; Abraham Leitzker, one (1) share; and two other shares held by parties whose names do not appear in the record.

2. The taxpayer was engaged in the business of buying and selling real estate. In certain real estate ventures it took in various individuals and other corporations to assist in the financing. Such parties were to receive profit or suffer loss in the proportion to the

amount of money advanced. During the year 1920 the taxpayer with others entered into the following real estate transactions:

457–477 Manhattan Avenue—5 participants—
    Reliant Leasing Co. (the taxpayer).
    Goldie Schack.
    Adelsia Realty Corporation.
    Harry H. Uhlfalder.
    Essie Leichter.
The taxpayer's profit in this deal was_____ $2,658.00

408–418 West One hundred and thirtieth Street—6 participants—
    Reliant Leasing Co. (the taxpayer).
    Goldie Schack.
    Primel Realty Co.
    Adelsia Realty Corporation.
    Harry H. Uhlfalder.
    Essie Leichter.
The taxpayer's profit_____ 1,864.25

530 One hundred and eighty-sixth Street—Taxpayer sole participant.
Profit _____ 6,654.77

522–526 West One hundred and forty-ninth Street—3 participants—
    Reliant Leasing Co. (the taxpayer).
    Essie Leichter.
    Louis Retzker.
Taxpayer's share of profits_____ 345.23

67 West One hundred and seventh Street—3 participants—
    Reliant Leasing Co. (the taxpayer).
    Harry H. Uhlfalder.
    Essie Leichter.
Taxpayer's profit _____ 962.00

945 St. Nicholas Avenue—taxpayer with two others.
Loss _____ 500.00

(This loss resulted from the fact that taxpayer paid $500 for its part of an option which was not executed.)

500 West One hundred and seventieth Street—two-thirds interest in loss _____ $1,164.66

(This loss was due to the failure to receive from the transaction the amount invested in the property.)

Michael Retzker, as president, drew a salary of $3,000 for the year 1920. The profits shown above are the net profits on each transaction, after deducting expenses, such as legal fees, brokerage charges, etc. A summary of the transactions is as follows:

Income:
⅕ Manhattan Avenue deal_____ $2,658.00
⅙ of One hundred and thirtieth Street deal_____ 1,864.25
All of 530 West One hundred and eighty-sixth Street deal\_\_\_ 6,654.77
⅓ of 522–526 West One hundred and forty-ninth Street deal\_\_\_ 345.23
⅓ of 67 West One hundred and seventh Street deal_____ 962.00
                                                ————
    Total_____ 12,484.25

Expenses:
⅓ loss 945 St. Nicholas Avenue_____ 500.00
⅔ loss 500 West One hundred and seventieth Street_____ 1.764.66
Salary, Michael Retzker_____ 3,000.00
                                                  ————
    Total_____ 5,264.66

Total receipts_____ 12,484.25
Total disbursements_____ 5,264.66
                                                  ————
Net profit_____ 7,219.59

Michael Retzker, president of the taxpayer corporation, testified that the corporation entered into a verbal agreement with Dora Retzker, his wife, whereby she contributed one-half of the cash required for the taxpayer's share of these transactions and that she was to get one-half of the taxpayer's profits, but no records were made of any such agreement or of any receipt by the corporation of any funds from her.

3. The taxpayer deducted $3,609.79, which was one-half of its net income after paying salary to its president and manager, from its gross income as the share of Dora Retzker before it paid its income tax. Dora Retzker filed her separate return and paid her income tax on this $3,609.79. Michael Retzker, the president of the taxpayer, filed his individual income-tax return, showing the amount of $3,000 salary, together with other income from other corporations and individual real estate deals.

4. In the various transactions referred to, the contracts with the various buyers and sellers were entered into by the taxpayer. The taxpayer, on locating a piece of property which was considered a good investment, would first go to its stockholders and ascertain if they desired to contribute a portion of the cost. If they did not desire to do so, the corporation, through its president and manager, would undertake to find others who were willing to do so. During the year involved in the appeal the contribution made by Dora Retzker, if any, was made with respect to such separate deals that she desired to enter into. Her agreement, if any, with respect to the transactions was made verbally between herself and her husband, Michael Retzker, as president and manager of the taxpayer corporation. The name of Dora Retzker did not appear upon the contracts for procuring or selling any property. At the end of each separate transaction the net profits were divided up with the various contributors, except Dora Retzker, pro rata, according to their interest. She received one-half of the profits of the business for the entire year involved in this appeal after deducting all expenses, including the salary of her husband as president and manager. No dividends were distributed by the corporation.

5. The Commissioner refused to allow the one-half of income paid to Dora Retzker as a deduction from the gross income of the taxpayer and asserts a deficiency in the sum of $1,120.51 for the year 1920.

### DECISION.

The determination of the Commissioner is approved.